## *Ex parte* WAGNER.

No. 32.   Opinion Filed April 27, 1908.

(95 Pac. 435.)

1. **CONSTITUTIONAL LAW—Initiative and Referendum.** The initiative and referendum provisions in the Constitution (article 5, sections 1, 2, 3, 4, 5, and article 18, sections 4, 5) are not in conflict with the Constitution of the United States (sec. 4, art. 4) guaranteeing to every state a republican form of government.

2. **SAME—Nonself-executing.** Said provisions as contained therein are not self-executing, but are made effective by an act of the legislature approved April 16, 1908.

3. **MUNICIPAL CORPORATIONS—Ordinances—Premature Petition for Referendum.** Until said provisions were made effective by legislation, a petition for a referendum filed with the chief executive officer of a municipality of the first class was of no effect.

4. **HABEAS CORPUS—Violation of Ordinance—Petition for Referendum.** An ordinance having been passed and published, and thereafter a petition for referendum filed with the mayor of Kingfisher, and afterwards said relator being convicted in said municipal court for an alleged violation after the filing of said petition. he is not entitled to be discharged from said conviction.

(Syllabus by the Court.)

Application of C. L. Wagner for a writ of *habeas corpus*. Writ denied.

On December 5, 1907, the mayor and council of the city of Kingfisher, Okla., passed an ordinance, No. 118, entitled "An ordinance providing for a levy and collection of a license tax on certain trades, occupations, callings, businesses and avocations, and regulating the same and providing penalties for violations thereof." The ordinance provided for the punishment of persons engaged in business without having paid a license tax as prescribed by said ordinance. On December 12, 1907, the ordinance was published

in the official organ of said city. On December 18, 1907, a petition signed by 25 per cent. of the qualified voters of said city, demanding a referendum vote on said ordinance, and requesting that same be held in abeyance until such election was held at which said ordinance could be voted upon and approved or rejected by the electors of said city, was filed with the mayor thereof.

On December 20, 1907, relator, C. L. Wagner, was tried and found guilty of violating said ordinance, and adjudged to pay a fine and costs of the action. The relator refused to pay the fine, and for that reason was committed to the city jail by the respondent, George H. Brown, the marshal of said city, under a commitment issued by the police court on the judgment rendered against said relator. The relator alleges in his petition that ever since that date he has been restrained of his liberty under said commitment. Thereafter, on the 2d day of January, 1908, application was made to this court for a writ of *habeas corpus* for the purpose of determining whether or not he was lawfully restrained of his liberty, and the same was issued on said date, made returnable on the 11th day of January, 1908. The ordinance was in due form, and there is no allegation against its validity, but the contention is that by virtue of said petition filed for a referendum vote that the same was held in abeyance until the next city election. George H. Brown, marshal of said city, as respondent, made his return to said writ, showing that he held the relator under a commitment issued by the police court of said city on a judgment of conviction for the violation of said ordinance. The facts as heretofore set out were admitted on a hearing of this cause.

*C. G. Horner* and *P. S. Nagle,* for relator.
*John T. Bradley, Jr.,* for respondent.

WILLIAMS, C. J. (after stating the facts as above). The question raised in this case is whether or not a petition demand-

ing a referendum vote upon an ordinance duly passed by a city of the first class after the same had taken effect and was in force, such demand having been presented to and filed with the chief executive officer of such city after such ordinance had been published, suspends the force and effect of said ordinance until the next municipal election. Of course, the question necessarily arises as to whether or not the different sections in the Constitution providing for the initiative and referendum are valid, and were in force and effect or self-executing on the 18th day of December, A. D. 1907, the date on which the petition demanding a referendum on said ordinance was filed with the mayor of the city of Kingfisher. The initiative and referendum provisions, relating, not only to the affairs of the state, but also to counties and cities, are taken substantially from the Constitution of Oregon. The Supreme Court of that state, in the case of *Kadderley v. Portland,* 44 Or. 119, 74 Pac. 720. 75 Pac. 222, has held that the same are not in conflict with section 4, art. 4, Const. U. S., guaranteeing to every state a republican form of government.

The next question is: Were said provisions self-executing on the 18th day of December, A. D. 1907? The Supreme Court of Oregon, in the case of *Stevens v. Benson* (Or.) 91 Pac. 577, held that the initiative and referendum provisions as contained in the Oregon Constitution were self-executing. The only difference between the provisions in that Constitution and those of this state is that in the former it is provided that, in submitting such petitions to the people, the Secretary of State and all other officers shall be guided by the general laws and the act submitting the initiative and referendum amendment to the people for adoption or rejection until legislation shall be especially provided therefor, clearly indicating that it was the intention in adopting the Oregon amendment that the same should then and there become self-executing. This clause does not appear in the Oklahoma Constitution. Substantially such provision was contained therein prior to the time that the constitutional convention reassembled after the proposed Constitution had been provided to be submitted to

the people for adoption or rejection. When the convention recon-
vened, in order to .obviate any possible objection that might be
made by the President of the United States to the same, wherein
it was required by section 4, art. 4, Const. U. S., and the terms
of the enabling act (Act June 16, 1906. c. 3335, 34 Stat. 267) to
be republican in form, and not in conflict with the provisions of
said act, that part was eliminated, leaving it to the Legislature
to carry same into effect. There was undoubted wisdom and pre-
caution in that act. If the enemies of the principle of the
initiative and referendum in popular government had been able
to convince the department of justice of the federal government
that such provisions of the initiative, and referendum, when
adopted by a state, rendered such state government unrepublican
in form, still it remained that until the Legislature acted the prin-
ciple was not self-executing in the Oklahoma Constitution. And,
until the Legislature enacted measures carrying it into effect, the
federal government had less right or reason to complain and that
was one of the reasons for such action assigned at the time; for, if
that contention against the provisions of the Constitution' or to
the initiative and referendum had been sustained, yet, as the same
were not self-executing in that Constitution, reason and considera-
tion of the rights of the people of the proposed state should cer-
tainly have impelled the promulgation of the proclamation of the
admission of the state into the Union. For, when the act of the
Legslature had been passed carrying same into effect, then the
question could in due and proper time have been raised that such
act was in conflict with section 4, art. 4, Const. U. S., and been
declared void, and by such  course preserved the supremacy of
the Constitution of the United States, and at the same time vouch-
safe the right of local self-government to over one million of
citizens.

The Legislature, carrying out the intention of the constitu-
tional convention with commendable fidelity, have enacted what is
known as House Bill No. 174, entitled "An act to carry into effect
the initiative and referendum powers reserved by the people in

articles 5 and 18 of the Constitution of the state of Oklahoma, to regulate elections thereunder, and to punish violations thereof." (Sess. Laws 1907-8, p. 440), which was approved by the Governor on the 16th of April, A. D. 1908, thereby making absolutely complete and effective said provisions of said Constitution. See Reg., Sess. Laws Or. 1903, p. 244; Sess. Laws Or. 1907, p. 398. This is a very comprehensive act, providing fully for the forms of petition, both initiative and referendum, and for review of the action of the Secretary of State by the Supreme Court, whose judgment shall be final and binding upon such officer, and provisions in detail are contained for the holding of such election. Sections 17, 18, and 19 of the same act relate to municipalities. In said section 17 it is provided that in all cities, counties, and other municipalities which do not provide by ordinance or charter for the manner of exercising the initiative and referendum powers reserved by the Constitution to the whole people thereof, as to their municipal legislation, the duties required of the Governor and Secretary of State by this act, as to state legislation, shall be performed as to such municipal legislation by the chief executive and the chief clerk of such municipality; and the duties required in this act of the Attorney General shall be performed by the attorney for the county, district, or other municipality.

In the case of *Taylor v. Hutchinson et al.*, 145 Ala. 207, 40 South. 109, the court says:

"Our Constitution contains many instances of nonself-executing provisions. In these cases there is always some indications that something is left for the Legislature to do, or there is something in the nature of the provision that renders such legislation necessary."

In the case of *Willis v. Mabon*, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626, discussing the question as to whether or not a provision of the Constitution of that state was self-executing, the court said:

"The question in every case is whether the language of a constitutional provision is addressed to the courts or to the Legislature.

Does it indicate that it was intended as a present enactment, complete in itself as definite legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined both from a consideration of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself, so that they can be determined by examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing."

See, also, *Acme Dairy v. City of Astoria* (Or.) 90 Pac. 153; *Swift & Co. v. City of Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404; *Logan et al v. Parish of Ouachita,* 105 La. 499, 29 South. 975.

Section 3, art. 5 Const. (Bunn's Ed. § 55), relating to the initiative and referendum provision, provides that "the Legislature shall make suitable provision for carrying into effect the provisions of this article." This especially indicates that it was not the intention of the constitutional convention that said articles should become effective until made so by act of the Legislature. In determining whether or not a provision of the Constitution is self-executing, we should consider the language in the light of the surrounding circumstances and conditions under which it was adopted, with a view of ascertaining the intention of the parties framing it. We accordingly conclude that on the 18th day of December, A. D. 1907, the provisions in our Constitution relating to the initiative and referendum were not self-executing, and that they did not become effective until the 16th day of April, A. D. 1908, when the act of the Legislature heretofore referred to was approved by the Governor of the state.

It is evident that if the provisions of article 5, relating to the initiative and referendum, were not self-executing on December 18, 1907, that section 4, art. 18, was also not self-executing, and it results as a matter of course that the petition demanding a referendum vote on the ordinance, filed with the mayor of the city of

Kingfisher on the 18th day of December, A. D. 1097, was without effect, and did not operate to supersede or suspend any ordinance. The fact that since said date the Legislature of this state has enacted a comprehensive and valid law carrying into effect all of the provisions of the initiative and referendum as reserved and contained in the Constitution could not give any validity to such petition, as that would have a retroactive effect or be in the nature of an *ex post facto* law.

Hence it is not necessary, in order to properly dispose of this case, to determine whether or not, after a city or municipality passes an ordinance and it becomes effective, a petition demanding the referendum on such ordinance thereafter being filed with the proper officer, in accordance with the charter or ordinance of said city, or with the general laws of the state, would have the effect to supersede or suspend the operation of such ordinance until the next municipal election. That question is not now properly before this court for determination; it being admitted that the ordinance under which this relator was prosecuted was properly enacted and published and otherwise valid. The only question before this court now is whether or not the demand for the referendum on such ordinance had the effect to supersede or suspend said ordinance. Having reached the conclusion that at the time such ordinance was passed and published the provisions in the Constitution relating to the initiative and referendum not being self-executing, although the same have since then been carried into effect by legislation, would not entitle the relator to the relief prayed for.

Writ of *habeas corpus* denied.

Turner and Dunn, JJ., concur; Kane and Hayes , JJ., concur in the conclusion denying the writ.