**In re REFERENDUM PETITION NO. 3, CITY OF CLAREMORE. MENDENHALL et al. v. HARRISON et al.**

No. 12595—Opinion Filed Feb. 28, 1922.

(Syllabus.)

**Municipal Corporations — Referendum on Ordinance—Petition — Substantial Compliance With Law.**

Petition was filed in the office of the mayor of Claremore, Okla. purporting to contain the signature of 483 legal voters of the city, the object of which was to invoke a referendum on ordinance No. 144, amending ordinance No. 24, of said city, pursuant to article 5 of the Constitution, chapter 37, Rev. Laws 1910. The petition so to do required the signature of 275 legal voters of the city, together with the post-office address, residence, and street number opposite each signature. These requirements were complied with by the 483 petitioners, except the street number in each instance was omitted. However, following the names of 290 of such signers, was a designation of the ward of the city in which they resided. A protest was filed to said petition, alleging that the same was not in form as required by law in that (a) the purported signatures of the same were not followed by the residence, street number, or proper post-office address of the purported signers thereon; (b) that said purported referendum petition did not set forth and contain a full and complete copy of the ordinance; (c) that the said petition did not ask for the submission of the question to be voted upon in the manner and form required by law—which protest was sustained by the mayor. Held, that the petition substantially complied with the provisions of the Constitution and statute, supra, and that the mayor erred in sustaining the protest.

Appeal from City of Claremore; J. M. Davis, Mayor.

Referendum petition by W. J. Mendenhall and others on ordinance of the City of Claremore. From finding of the Mayor that petition was insufficient, upon protest of M. R. Harrison and another, petitioners bring error. Reversed and remanded.

W. H. Rossman, J. H. Broden, and Rainey & Flynn, for plaintiffs in error.

Jno. Q. Adams and Richard H. Willis, for defendants in error.

JOHNSON, J. This appeal involves the sufficiency of referendum petition No. 2, city of Claremore, Okla.

The case is before us on an agreed statement of facts, which discloses that on the first day of August, 1921, the city council of the city of Claremore, Okla., passed ordinance No. 144, amending ordinance No. 24, of the City of Claremore, Okla. On the 6th day of August, petitioners filed with city clerk of said city of Claremore a true copy of referendum petition relative to ordinance No. 144, permitting picture shows to operate in Claremore, Okla., on Sunday, which said petition the petitioners proposed to circulate. That signatures to said petition were secured from August 8th to August 13, 1921. That on the 15th day of August, original petition was filed with Hon. J. M. Davis, mayor of the city of Claremore. That on the 16th day of August, the mayor published notice of filing said petition with him, which publication gave notice of the privilege of filing protest against the sufficiency of said petition. That on the 25th day of August, 1921, M. R. Harrison and L. W. Brophy did file objections with the mayor as to the sufficiency of said petition. That on the same day the mayor set September 1, 1921, at 10 a. m. of said day, to hear protests. On the 1st day of September, 1921, the mayor did hear protests and arguments by counsel from both sides. That after hearing on same, the mayor found that the said referendum petition was insufficient, to which finding petitioners duly objected and gave notice of appeal to the Supreme Court of the state of Oklahoma. That a ballot title was prepared by proponents of petition, and a copy filed each with city clerk, mayor, and city attorney of Claremore on the 22nd day of August, 1921. That the city attorney of Claremore, Okla., prepared an amended ballot title, and filed said amended ballot title with city clerk of Claremore on the 25th day of August, and on the 30th day of August filed a true and exact copy of amended ballot title as prepared by city attorney with chairman of county election board of Rogers county, Okla.

The assignments of error set forth in the petition in error are as follows:

"Said mayor erred in holding said referendum petition No. 2, insufficient to submit the question therein proposed to be submitted to a vote of the people of Claremore, Okla., to invoke the referendum thereon.

"Said mayor erred in not holding said referendum petition sufficient to invoke the referendum on the question thereby sought to be submitted to a vote of the people of Claremore, Okla.

"Said mayor erred in not submitting to a referendum vote of the people of Claremore,

. Okla., the question proposed to be submitted by said referendum petition No. 2, of the said city of Claremore, Okla."

But one question is raised by these assignments, that is, Did the mayor err in holding that the petition was insufficient to invoke a referendum on the question thereby sought to be submitted to a vote of the people of Claremore? This question must be determined by the inspection of the petition itself.

In the case of Mayor and Councilmen of the City of Pawhuska v. Pawhuska Oil & Gas Co. et al., 28 Okla. 563, 115 Pac. 353, this court held as follows:

2. "Sections 17, 18, and 19, art. 1, c. 44, Sess. Laws 1907-8, vitalized the initiative and referendum provisions of article 18 of the Constitution of this state."

3. "Section 5b, art. 18, of the Constitution of this state, requires initiative petitions as to municipal legislation, demanding that a franchise be granted, to be filed with the chief executive officer or mayor of such municipal corporation."

Such was the holding of this court in the case of Lowther v. Nissley, Mayor, City of Guthrie, 38 Okla. 797, 135 Pac. 3. In this case it was held that in the matter of the petition a substantial compliance with the provision of the Constitution was all that was required.

The specific objections to the sufficiency of the petition were stated by counsel for defendants in error in their brief as follows:

"That the purported petition is not in form as required by chapter 37 of the Revised Laws of 1910, in this, to wit: (a) That the purported signatures on said petition are not followed by the residence, street number, or proper post-office address of the purported signers thereon; (b) that said purported referendum petition does not set forth and contain a full and complete copy of the ordinance upon which a referendum vote is asked; and (c) that the said referendum petition does not ask for the submission of the question to be voted upon in the manner and form required by section 3368 of chapter 37 of the Revised Laws of 1910."

These objections will be considered together.

Section 3368, Rev. Laws 1910, cited by counsel, provides that "referendum petition shall be substantially as follows": (then sets out the form of petition in blank to be presented to the governor in case of a state question to be referred, or to the mayor,

chairman and county commissioners, or other chief executive officers, as the case may be, of city, county, or other municipal corporations); and concludes by providing that the petitioner shall sign his name, followed by residence, post-office address, and, if in city, the street number.

It is stipulated in the agreed statement of facts that ordinance No. 144, the one to be referred, consisted of the caption, sections 1, 2, 3, and 4, the latter being an emergency clause, all of which are referred to in the petition under appropriate designation, and of the designation as to the 4th section, contained in brackets [not admitting emergency clause legally adopted], and the record discloses that the same had not received the requisite number of votes in the city council to effect its adoption.

The petitions contained the name of the voters, followed by "Claremore, Oklahoma," Ward No. ——," under the word "post-office"; "Claremore, Okla." under the word "residence."

The statement of facts discloses that no street number was given in any instance: also that, while the city council had some time theretofore provided for the numbering of residences by street number, there was about 40 per cent. of the residences in the city that had never been numbered; that the city of Claremore contained about 4,000 inhabitants, or somewhat less, and there were polled at the last preceding election 1,097 votes; that the 25 per cent. of voters required to sign the petition would be 275; that the petition contained the names of 483 voters, and of that number 290 signers designated their ward.

Counsel for defendants in error in their brief stress most strongly the first objection urged to the petition, "that the purported signers of said petition are not followed by the residence, street number, or post-office address of the purported signers thereon." As we have seen, petitions did state the residence as Claremore, and post-office address as Claremore, but did not give the street number. But, as we have seen, more than the requisite 25 per cent. gave the ward in which they resided.

In the case of In re Referendum Petition No. 51, Muskogee Free Fair Bill, 68 Oklahoma, 172 Pac. 639, this court stated as follows:

"The aims of the statute requiring correct addresses of the signers is to enable a protestant of the petition to trace the signer for the purpose of determining his qualifi-

cation to sign the petition, and when this cannot be done, on account of the procedure adopted here, the statute is not substantially complied with, and the presumption that the signatures were those of legally qualified electors is prima facie destroyed."

This, we think, is the correct rule, and the one that should govern in the instant case, and that the converse of the purpose is likewise true, that is, if the procedure adopted enables the protestants to trace the signers to determine their qualification to sign the petition, then there is a substantial compliance with the constitutional requirement; and, applying this rule in the instant case, it seems clear to us that in a city containing some 4,000 population and wherein at a general election recently held therein something over 1,000 votes were cast, and where the petitioners signed in the instant case disclosed that 483 purported voters in said city had signed the petitions and that more than the required one-fourth had given their residence and post-office addresses as being in said city and had designated the ward in which they resided, all of which was before the protestants, and in case the mayor had granted the petition and ordered the election, according to law, which required that ten days' notice should be given, thereby giving the protestants at least nine full days in which to investigate the qualifications of such signers, the protestants were thereby afforded ample opportunities for such investigation. No allegation is contained in the protest filed that would indicate that such would not be the case. No fraud was charged in the procurement of the signatures. The residence and citizenship of no voter was challenged by allegation in the protest, but all of the objections urged were of the most technical character.

Section 3393 of chapter 37, supra, provides:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

We think, in view of the entire record, that the mayor should have overruled the protest and ordered the election as prayed for in the petitions before him.

The order of the mayor sustaining the protest is reversed, and the cause remanded, with direction that he proceed in the matter in accordance with the views herein expressed.

HARRISON, C. J., and KANE, MILLER, and KENNAMER, JJ., concur.